JOHN C. CRUDEN
Acting Assistant Attorney General
GUILLERMO A. MONTERO
BARRY A. WEINER
LUTHER L. HAJEK
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
Post Office Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0469
Fax: (202) 305-0274
Email: Barry.Weiner@usdoj.gov

Attorneys for the Federal Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) <br> ) <br> GREATER YELLOWSTONE COALITION, ) <br> et al., ) <br> ) <br>       Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> KENNETH L. SALAZAR, in his official ) <br> capacity as Secretary of the Interior, et al., ) <br> ) <br>       Defendants, ) <br> ) <br>       and ) <br> ) <br> INTERNATIONAL SNOWMOBILE ) <br> MANUFACTURERS ASSOCIATION, ) <br> ) <br>       Defendant-Intervenor. ) <br> _____ ) | Case No. 1:08-cv-02138 (EGS) <br><br> [Summary Judgment Hearing <br> on November 18, 2009] |

---

## DEFENDANTS' COMBINED CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

Federal Defendants, through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move for summary judgment on all claims and oppose GYC's motion for summary judgment.

## I.   INTRODUCTION

This is a peculiar case.  The Greater Yellowstone Coalition's ("GYC") Complaint challenges a Federal Register Notice that did nothing more than notify the public of a court order.  The Complaint also requests that this Court order the National Park Service ("Service") to prepare an interim winter use plan; precisely what the Service is already doing.  Thus, GYC's claims lack merit, and its requested remedy would serve no purpose.  For these reasons, GYC's motion for summary judgment should be dismissed, and Federal Defendants' motion for summary judgment should be granted.

GYC's theory of this case can be summarized as follows: After undertaking the "further proceedings" ordered by this Court in an earlier civil action, the Service issued a "rule" – i.e., the Federal Register Notice – which GYC describes as a "decision" to "authorize" an increase in the number of daily snowmobile entries above the 540 figure that this Court has already rejected. Arguing that this "rule" cannot be reconciled with this Court's September 15, 2008 Order or the various legal authorities interpreted therein, GYC asks this Court to enjoin implementation of the "rule" and to order the Service to promulgate new rules.

As Defendants have explained throughout this litigation, GYC's theory suffers from several fatal and closely related defects.  First and most fundamentally, the Service has not yet "authorized" anything.  It was the Wyoming Court, and not the Service, that reinstated the 2004 Rule, which permits up to 720 daily snowmobile entries.

Second, GYC's suggestion that the "further proceedings" ordered by this Court resulted in a final decision of any kind is simply incorrect. Those "further proceedings" are ongoing, and have not yet produced a decision. Lest there be any confusion, the challenged Federal Register Notice and the Service's "further proceedings" in response to this Court's September 15, 2008 Order are two separate and distinct matters. The former is a publication that provides public notice of another court's interim remedy order, while the latter is an ongoing rulemaking action. In this sense, the Federal Register Notice is a distraction from the real legal issues surrounding winter use, and one that merits no attention by this Court. GYC's alleged grievance, contrary to its Complaint, appears to stem from the fact that the Service has not yet issued a rule replacing the Wyoming court's interim remedy. By contrast, GYC cannot credibly allege any grievance actually resulting from the Federal Register Notice.

This leads to the third fatal flaw. GYC's implied argument – that the Service could and should have <u>replaced</u> the Wyoming Court's interim remedy with a new rule prior to the 2008-2009 winter season, and that it failed to do so – is outside the scope of this Court's judicial review as framed by GYC's Complaint. Claims alleging that an agency has "unlawfully withheld or unreasonably delayed" action that it was required by law to take must be raised pursuant to 5 U.S.C. § 706(1). Defendants, therefore, repeatedly raised this defect to GYC's attention. If presented with an administrative record <u>for the ongoing rulemaking action</u>, this Court would have found that the Service has <u>not</u> unreasonably delayed its rulemaking proceedings. Such a record would also further undermine the (now debunked) suggestion that the Service somehow "abandoned" its ongoing rulemaking proceedings.

GYC declined to amend its Complaint. Instead, GYC persists in challenging the ministerial Federal Register Notice. Such a claim, however, cannot succeed. Simply put, this

Court cannot order the Service to undertake a rulemaking effort, because such a rulemaking effort is already ongoing.  Nor can this Court order the Service to complete its ongoing rulemaking effort by a time certain, unless it determines that the Service has unreasonably delayed those proceedings within the meaning of 5 U.S.C. § 706(1) – and that issue is not currently before the Court, because GYC has not sought such a determination.  GYC may someday assert a challenge under Section 706(1), and Defendants will assert their full defenses at that time.  Until that time, however, GYC's narrow challenge to the Federal Register Notice must be rejected.

GYC's theory of the case, its pleading errors, and its incorrect operating assumptions have unnecessarily complicated the resolution of this case.  Notwithstanding this, the legal and procedural issues presented by this case are familiar to the courts in this Circuit, as evidenced by the controlling authorities referenced herein.  Consistent with those authorities, Federal Defendants have organized their response to GYC's arguments as follows:

Beginning with the United States' sovereign immunity and GYC's limited right of action, Section IV.A of this memorandum incorporates by reference Defendants' prior arguments that the Federal Register Notice is not a final agency action subject to judicial review under the Administrative Procedure Act, and explains why this Court should revisit the issues presented in Defendants' motion to dismiss.

Turning next to the claim that GYC, for whatever reason, failed to bring, Section IV.B responds to GYC's implied argument that the Service improperly failed to issue a regulation in advance of the 2008-2009 winter season.  Defendants submit that GYC's Complaint and the evidentiary record before the Court are not adequate for effective judicial review of a "failure to act" claim under 5 U.S.C. § 706(1).  Notwithstanding this, Defendants explain that the

circumstances already known to the Court preclude a finding of unreasonable delay, and further

explain that in the event GYC decided to amend its Complaint, the Service could lodge an

administrative record demonstrating that the Service has not unreasonably delayed in its

rulemaking process.

Finally, Section IV.C explains that prudential considerations counsel against granting

GYC's motion for summary judgment because the requested relief is wholly duplicative of the

rulemaking efforts that the Service has already undertaken of its own accord.  On these grounds,

Defendants respectfully submit that the Court should deny GYC's motion for summary judgment

and that it should grant Federal Defendants' cross-motion for summary judgment.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    General Background

The history of litigation over Park Service regulation of snowmobile use in Yellowstone

National Park, Grand Teton National Park, and the John D. Rockefeller, Jr. Memorial Parkway

("the Parks") is long and well-known to this Court, see Greater Yellowstone Coalition v.

Kempthorne, 577 F.Supp. 2d 183, 186-88 (D.D.C. 2008), and need not be restated here.  The

following summarizes only those points of relevance to this case.

After numerous regulations and years of litigation, the Park Service in 2004 issued a

temporary winter use plan (hereinafter "2004 Rule" or "720 Rule") that was intended to provide

a framework for managing winter use in the Parks for three years.  The 2004 Rule authorized up

to 720 recreational snowmobile entries per day, along with other requirements.  69 Fed. Reg.

65,348 (November 10, 2004).  This Rule remained effective through the winter season of

2006–2007, but was replaced on December 13, 2007 with a new winter management scheme,

hereinafter referred to as the 2007 Rule (or 540 Rule).  72 Fed. Reg. 70,781.  The 2007 Rule authorized up to 540 snowmobile entries per day, and up to 83 snowcoaches per day.

A number of plaintiff groups filed suit challenging the 2007 Rule in two districts.  The Greater Yellowstone Coalition, Wilderness Society, Natural Resources Defense Council, Winter Wildlands Alliance, and Sierra Club (collectively, "GYC") filed a complaint in this Court (Case No. 07-cv-2111-EGS) challenging the 2007 Rule and its supporting National Environmental Policy Act ("NEPA") documents.  The National Parks Conservation Association ("NPCA") also filed a complaint (Case No. 07-cv-2112) challenging the 2007 Rule on similar grounds, which was consolidated with the GYC case.

Challenges to the 2007 Rule were also filed in the District of Wyoming.  The State of Wyoming and Park County, Wyoming, both filed petitions for review of agency action challenging the 2007 Rule, which were consolidated.  See AR Order at 3-4.[1]

On March 25, 2008, Federal Defendants filed contingent motions to transfer in both the Wyoming and D.C. courts in an attempt to consolidate the cases in a single district.  In so doing, Defendants hoped to avoid the risk of inconsistent judgments between this Court and the Wyoming Court.  GYC, however, argued that Defendants had overstated the risk of conflicting court orders.  Agreeing with GYC's argument, this Court denied Defendants' motion to transfer on April 24, 2008.

On May 9, 2008, GYC and NPCA filed motions for summary judgment in the consolidated D.C. cases.  On September 15, 2008, this Court issued a Memorandum Opinion and

---

[1]      For purposes of this brief, the first document in the Administrative Record is referenced as AR Order; the second document is referenced as AR Judgment; the last document is referenced as AR FRN.  Greater Yellowstone Coalition's memorandum in support of its summary judgment motion is referenced as GYC Br. at ___.

Order granting the plaintiffs' motion for summary judgment and denying the Federal

Defendants' cross motion.  As part of that Order, this Court vacated the 2007 Rule and NEPA

documents, and remanded them to the Service for further proceedings consistent with the

Opinion.  See Greater Yellowstone Coalition v. Kempthorne, 557 F. Supp.2d at 210.

**B.     The Service's Ongoing Rulemaking Proceedings**

On November 5, 2008, the Service published notice of a proposed interim rule to manage

winter visitation and recreational use in Yellowstone for a period of three winter seasons.  That

rule proposed the authorization of 318 daily snowmobile entries (hereinafter the "proposed 318

Rule"), but was in other respects similar to the 2004 Rule.  73 Fed. Reg. 65,784 (Nov. 5, 2008).

The Service issued this proposed rule in an attempt to fill the regulatory void left by this Court's

vacatur of the 2007 Rule.  As recognized in the preamble, however, the order vacating the 2007

Rule left the Service with very little time – only 90 days – in which to complete its analysis and

deliberations.  Id. at 65,796.  The 90 days ultimately proved insufficient.  The Service was only

able to offer a truncated public comment period of 15 days on the Rule and its accompanying

environmental assessment, but nevertheless received 27,427 comments, all of which the Service

was required to consider prior to finalizing the proposed 318 Rule.  The Service also learned

from the comments it received and through other communications that a subsequent order by the

Wyoming court (discussed below) had caused confusion as to whether the proposed rule

remained open for comment, thereby compromising the effectiveness of the comment period.

As noted above, the Service is still working on the proposed 318 Rule, and intends to

issue a final interim rule on or before November 15, 2009.  As part of this effort, the Service

issued a Federal Register notice reopening the comment period on the proposed 318 Rule for

another 45 days, beginning on July 24, 2009.  See 74 Fed. Reg. 36,640 (July 24, 2009).

**C.      The Wyoming Court's Interim Remedy and the Challenged Federal Register Notice**

Following this Court's Opinion and Order, the Wyoming court issued an order addressing the petitions for review before it.  See AR Order.  The Wyoming court determined that this Court's Order vacating and remanding the 2007 Rule must remain undisturbed.  See id. at 12.  However, the Wyoming court also reinstated the 2004 Rule – which allows up to 720 daily snowmobile entries for Yellowstone – on grounds that such a remedy was necessary to "provide businesses and tourists with the certainty that is needed in this confusing litigation."  Id. at 14, 15; see also AR Judgment at 1 (indicating that the Wyoming court had "entered a final order implementing a temporary rule").  The Court ordered that the 2004 Rule would remain in place "until such time as [the Park Service] can promulgate an acceptable rule to take its place."  AR Order at 21.

On December 9, 2008, the Service published the Federal Register Notice at issue in this case (hereinafter "Federal Register Notice" or "Notice").  See AR FRN.  That Notice communicated the terms of the Wyoming court's interim remedy to the general public.

**D.      GYC's Complaint in the Instant Case**

GYC filed its Complaint in the above-captioned case on December 9, 2008.  GYC's Complaint alleges that the Federal Register Notice violates the National Park Service Organic Act ("Organic Act"), the Yellowstone National Park's Enabling Act, Executive Orders 11,644 and 11,989, NEPA, and 36 C.F.R. § 2.18(c).  See Complaint ¶¶ 46-61.  In its prayer for relief, GYC asks that this Court declare the Federal Register Notice unlawful, that it set aside the Notice, and that it enjoin "implementation" of the Notice following the 2008-2009 winter season.  See Complaint at 26.  GYC further requests that the Court order the Service to prepare an interim winter use plan "that complies with this Court's prior orders" while at the same time

preparing a final winter use plan "consistent with National Park Service mandates." Id.  GYC's Complaint, however, is directed only at the Federal Register Notice; it purports not to challenge the Wyoming court's reinstatement of the 2004 Rule, id. ¶ 46, nor does it present a challenge to the ongoing rulemaking action (i.e., the proposed 318 Rule).  The Complaint also fails to explain why GYC is requesting that the Court order the Service "to prepare an interim winter use plan that complies with this Court's prior orders" (id. at 26) when the Service has already engaged in precisely that effort.

### E.      Other Litigation Pending in the D.C. and Wyoming Courts

In addition to the above-referenced action, Defendant-Intervenors in Greater Yellowstone Coalition v. Kempthorne, 577 F.Supp. 2d 183, 186-88 (D.D.C. 2008) filed a Notice of Appeal of this Court's September 15, 2008 decision to vacate the 2007 Rule.[2]  That appeal remains pending.  NPCA then filed a motion with the D.C. Circuit requesting a limited remand to allow this Court an opportunity to issue any amendments to its order that it may deem necessary in light of the Wyoming district court's reinstatement of the 2004 Rule.  That motion was denied.

NPCA has also filed an appeal of the Wyoming court's order.  The Tenth Circuit has scheduled oral argument on that appeal for September 25.  As noted above, however, the Service intends to issue a final interim winter use regulation on or before November 15, to replace the 2004 Rule reinstated by the Wyoming court.

Finally, the State of Wyoming filed a purported "motion to enforce" the Wyoming court's order, in which it sought to enjoin the Service's interim winter use rule and keep the 2004 Rule in effect.  The Wyoming court denied the motion on September 16, 2009.

_____

[2]      Federal Defendants had also filed a protective notice of appeal, but have since dismissed their appeal.

### III.     STANDARDS OF REVIEW

#### A.     Standard Under Fed. R. Civ. P. 56

Summary judgment is appropriate for issues of jurisdiction and justiciability if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Here, because GYC bears the burden of establishing that jurisdiction and justiciability exists, see Suter v. Artist M., 503 U.S. 347, 363-364 (1992); U.S. Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000), Federal Defendants need only point out "that there is an absence of evidence to support the [plaintiff's] case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  At that point, GYC "may not rest upon the mere allegations or denials of [its] pleading," but must set forth by affidavit or other competent evidence "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

For claims evaluating the merits of an agency action under the Administrative Procedure Act ("APA"), the Court reviews the agency's administrative record, and may not "find" underlying facts.  Celotex Corp. v. Catrett, 477 U.S. at 322; see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1282 (D.C. Cir. 2005) ("'[C]laims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues.'") (quoting Atl. States Legal Found. v. E.P.A., 325 F.3d 281, 284 (D.C. Cir. 2003)).  Rather, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Hosp. of Univ. of Pennsylvania v. Sebelius, — F. Supp.2d —, 2009 WL 1976527, at *2 (D.D.C. 2009).

### B.      Standard of Review under the APA

Challenges to agency actions taken pursuant to the Organic Act, and NEPA are subject to the judicial review provisions of the APA.  See Town of Stratford, Conn. v. F.A.A., 285 F.3d 84, 88 (D.C. Cir. 2002) (NEPA); Sierra Club v. Mainella, No. Civ.A. 04-2012 JDB, 2005 WL 3276264, at *8 n.6 (D.D.C. Sept. 1, 2005) (Organic Act).  The APA governs review of "agency action," dictating the type of action that is judicially reviewable, the timing of judicial review, the scope of review permitted, and the standard to be applied by the reviewing court.  5 U.S.C. §§ 701-706; Darby v. Cisneros, 509 U.S. 137, 146 (1993).  In evaluating the legal sufficiency of agency actions, the Court must apply the "arbitrary and capricious" standard of the APA.  5 U.S.C. § 706(2)(A).  This standard is a narrow one whereby "[t]he court is not empowered to substitute its judgment for that of the agency."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  Rather, a court's role is to decide whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Id.

## IV.    ARGUMENT

### A.      The Service is Entitled To Summary Judgment Because GYC's Claims Are Barred by the United States' Sovereign Immunity and Because GYC Lacks a Private Right of Action

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued[,] and the terms of its consent to be sued in any court define that court's jurisdiction . . . ."  Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (internal quotations, notations and citations omitted); In re Olson, 884 F.2d 1415, 1428 (D.C. Cir. 1989); see also United States v. Mottaz, 476 U.S. 834, 841 (1986).  A claim asserted against the Government that does not fall within the scope of a waiver of sovereign immunity must be denied.  See, e.g., P&V Enterprises v. U.S. Army Corps of Engineers, 516 F.3d 1021, 1026 (D.C. Cir. 2008).  In addition, a plaintiff seeking to enforce a

federal statute must identify a private right of action.  Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.").  The burden of demonstrating the existence of jurisdiction, a waiver of sovereign immunity, and an applicable right of action falls on the plaintiff.  Artist M., 503 U.S. at 363-364; US Ecology, Inc., 231 F.3d at 24.

In an attempt to meet this burden, GYC relies on the right of action and waiver of sovereign immunity provided by the APA.  See Complaint ¶ 11.  The APA, however, grants a right of action only to plaintiffs "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute. . ."  5 U.S.C. §702.  Thus, under the APA, "the person claiming a right to sue must identify some 'agency action' that affects him . . . ."  Lujan v. National Wildlife Federation, 497 U.S. 871, 882 (1990). Moreover, "when . . . review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA" as is the case in this litigation, "the 'agency action' in question must be 'final agency action.'"  Id. at 882 (emphasis added); see also 5 U.S.C. § 704.  Absent these elements, a reviewing court cannot reach the merits of GYC's claims.  See DRG Funding Corporation v. HUD, 76 F.3d 1212, 1214 (D.C. Cir. 1996); Public Citizen v. Office of U.S. Trade Representatives, 970 F.2d 916, 919 (D.C. Cir. 1992).

For the reasons explained below, GYC has failed to identify an "agency action" – final or otherwise – as the focus of its claims.  Accordingly, GYC's complaint must be rejected.

### 1.    The Federal Register Notice is Not "Agency Action" Within The Meaning of APA §§ 551, 702, 704

"Agency action" is defined by the APA as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  The APA further defines two of the terms that appear in Section 551(13), i.e., "agency" and "rule."  The term "agency" refers to "each authority of the Government of the United States, . . . but does not include . . . the courts of the United States."  5 U.S.C. § 551(1) (emphasis added).  The term "rule" is defined in relevant part as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ." Id. § 551(4) (emphasis added).

GYC has not directly challenged the Wyoming court's reinstatement of the 2004 Rule, nor could it, because the actions of a court do not constitute "agency action" and, accordingly, such a challenge is not within the scope of the APA's private right of action and waiver of sovereign immunity.  See 5 U.S.C. § 551(1)(B).  Instead, GYC challenges the Service's publication of the Federal Register Notice – which announces the Wyoming court's interim remedy – in a creative attempt to circumvent the APA's bar against challenges to court action. This strategy, however, also fails because the Federal Register Notice itself is not an agency action within the meaning of 5 U.S.C. § 551(13).

In order for an agency pronouncement to be a "rule" within the meaning of the APA, it must have "future effect" and be "designed to implement, interpret, or prescribe law or policy . . . ."[3]  Id.  An agency pronouncement meets this test if it "change[s] any law or official policy

---

[3]    GYC's reliance on the APA's right of action and waiver of sovereign immunity is predicated solely on the assumption that the Federal Register Notice constitutes a "rule" within the meaning of 5 U.S.C. § 551(13).  Complaint ¶¶ 1, 43, 46; see also Dkt. #12 at 10-11.  GYC

(continued...)

presently in effect." Indus. Safety Equip. Ass'n v. E.P.A., 837 F.2d 1115, 1120 (D.C. Cir. 1988).

By contrast, an agency pronouncement does not meet the test if it merely reports factual matters

or restates an established interpretation of law or policy. Id..

The D.C. Circuit's decision in Indep. Equip. Dealers Ass'n v. E.P.A., 372 F.3d 420 (D.C.

Cir. 2004), is instructive here.  There, a trade association sought the EPA's concurrence in its

interpretation of regulations pertaining to industrial engines.  The EPA responded with a letter of

non-concurrence, which in turn prompted the trade association to challenge the EPA's response.

Id. at 421.  Judge – now Chief Justice – John Roberts concluded that the D.C. Circuit lacked

jurisdiction to review the EPA letter because it did not constitute an agency "action" as that term

is used in the APA or in the Clean Air Act.  Id. at 428.  Specifically addressing the APA, the

court explained that the challenged letter merely restated the EPA's interpretation of its

regulations, i.e., it did not proffer a new interpretation nor did it effect a change in the

regulations themselves.  Id. at 427.  Recognizing that the EPA letter "left the world just as it

found it" and "tread no new ground," the court concluded that the it could not "fairly be

described as implementing, interpreting, or prescribing law or policy."  Id. at 428.  Accordingly,

the letter did not constitute a "rule" within the meaning of 5 U.S.C. § 551(4) and (13).

Similarly in the instant case, Defendants have explained, and this Court has confirmed,

that the 2004 Rule was reinstated on November 7, 2008 by operation of the Wyoming court's

---

[3]/(...continued)
does not attempt to characterize the Federal Register Notice as an order or license within the
meaning of 5 U.S.C. § 551(13).  See Indus. Safety Equip. Ass'n v. E.P.A., 837 F.2d 1115, 1119
(D.C. Cir. 1988) (recognizing that while 5 U.S.C. § 551(13) references other categories of
agency action, the plaintiff had "rest[ed] reviewability entirely on its characterization of the
[agency pronouncement] as an agency rule").

order.  See Dkt. #10 at 10; Dkt. #33 at 13:4-5.[4]  Defendants have also explained that the Federal

Register Notice merely alerts the public of the Wyoming court's reinstatement of the 2004 Rule,

and reprints the content of the 2004 Rule *verbatim*.  Dkt. #10 at 10.  Thus, as with the EPA letter

at issue in Indep. Equip. Dealers, the Service's Federal Register Notice "left the world just as it

found it" – with a rule in effect by order of the Wyoming court.  Accordingly, the Federal

Register Notice is not a rule within the meaning of 5 U.S.C. § 551(13), and GYC's attempt to

challenge the Notice must be rejected.

**2.    GYC's Reliance on the Manner in Which The Notice was Labeled in the Federal Register Notice is Misplaced**

Faced with the above argument in Defendants' motion to dismiss, GYC responded only

that the Federal Register Notice must be a "rule" within the meaning of Section 551(13) because

that is how it was labeled in the Federal Register.  See Dkt. #12 at 10-11 & n.2.  This Circuit,

however, has long held that the manner in which an agency or the Federal Register "labels"

agency pronouncements is not dispositive of their legal significance.  See Chamber of

Commerce of United States v. OSHA, 636 F.2d 464, 468 (D.C. Cir. 1980).  "Instead, it is the

---

[4]    The fact that the Wyoming court (not the Service) reinstated the 2004 Rule is also evident from the plain language used in the Wyoming court's Order and Judgment, the Federal Register Notice itself, and the Service's opposition to the reinstatement of the 2004 Rule, which the Service filed during proceedings in the Wyoming litigation.  See AR Order at 17-18 ("this Court has . . . fashioned a remedy to be followed by the NPS until it can promulgate a valid rule . . . ."); AR Judgment at 1 (confirming that the Court earlier had "entered a final order implementing a temporary rule"); 73 Fed. Reg. 74606 ("Publication of this final rule in the Federal Register complies with the November 7, 2008 order of the U.S. District Court for the District of Wyoming in Wyoming v. United States Department of the Interior, Case Nos. 07-CV-0319-B, 08-CV-00004-B, which reinstated the 2004 final rule on winter use in the parks . . . .") (emphasis added); Dkt. #13 at 8 (quoting the Service's argument to the Wyoming court that reinstating the 2004 Rule would not be equitable, would be unsupported by any existing NEPA document, and would be incompatible with the D.C. Court's September 15, 2008 Order invalidating a lower level of usage, i.e., 540 snowmobiles per day).

substance of what the agency has purported to do and has done which is decisive." Id. (internal

quotation marks omitted).  Thus, for example, none of the analysis in Indep. Equip. Dealers, 372

F.3d 420, 428 (D.C. Cir. 2004), turned on or even referenced the fact that the agency had styled

its pronouncement as a "letter" rather than a "rule."  In determining whether the letter constituted

a "rule," the only salient inquiry in that case was whether the letter had legal effect.  Id. at 428.

It is therefore insignificant that the Federal Register Notice at issue in this case was labeled a

"final rule."  The fact remains that the Notice accomplished nothing other than to alert the public

of the Wyoming court's interim remedy.  Thus, the Notice itself cannot fairly be characterized as

a "rule" within the meaning of 5 U.S.C. § 551(4).

> **3.**     **The Finding that the Federal Register Notice Constitutes an
> "Abandonment" of the 2008 Proposed Rule and, thus, Final Agency
> Action, Cannot Be Sustained**

Not surprisingly, this Court has rejected GYC's characterization of the Federal Register

Notice as the source of the current "720 Rule" management scheme in Yellowstone.  Compare

Dkt. #12 at 5 (GYC: "[o]n December 9, 2008, the agency promulgated a 'final rule' authorizing

a significant expansion of recreational snowmobiling within Yellowstone . . . .") with Dkt. #33 at

13:4-7 (finding that it was the Wyoming court's order, and not the Federal Register Notice, that

"temporarily reinstated the 720-snowmobile rule").  Instead, in denying Defendants' motion to

dismiss, this Court accepted GYC's alternative argument that the Service's publication of the

Federal Register Notice constituted a decision to "abandon" a separate and distinct rulemaking

action – one that would have allowed up to 318 daily snowmobile entries instead of 720.  Id. at

11, 13.  The Court then determined (1) that this "abandonment" of the proposed Interim Rule

satisfied the first factor in Bennett v. Spear, 520 U.S. 154, 177-178 (1997), because it

represented "the consummation of the Park Service's decision-making process," and (2) that this

"abandonment" satisfied the second factor in <u>Bennett</u>, i.e., it had "concrete legal consequences," because the "abandonment" left the Wyoming court's interim remedy in place. <u>Id.</u> at 14:4-14. On these grounds, the Court concluded that the Federal Register Notice was a "final agency action" within the meaning of 5 U.S.C. §§ 702, 704.

While such an "abandonment" of rulemaking might be a reviewable agency action in certain circumstances, Defendants respectfully submit that this is not such a case.  The evidence that Defendants have lodged with this Court following the motion to dismiss proceedings (some at the Court's direction) demonstrates conclusively that the Service <u>did not</u> abandon its proposed 318 Rule.  Thus, the factual and procedural circumstances before this Court, and the defects in GYC's case, are now more clearly developed than they were when the Court denied Defendants' motion to dismiss.

   **a.  The evidence now before the Court does not support a finding that the Service "abandoned" the proposed interim rule**

On June 11, 2009, this Court denied Defendants' motion to dismiss on grounds that the Service's "abandonment" of the proposed interim rulemaking action constituted final agency action subject to judicial review.[5]  <u>See</u> Dkt. #33 (June 11, 2009 Transcript) at 11, 14.  The motion, however, was filed under Federal Rule of Civil Procedure 12(b)(6) and, accordingly, was necessarily resolved without the consideration of matters beyond the pleadings.  <u>See</u> F.R.Civ.P. 12(d); <u>Doe v. U.S. Dep't of Justice</u>, 753 F.2d 1092, 1096 n.1 (D.C. Cir. 1985).  The standard of review on that motion, moreover, required that the Court view all facts in the light

---

[5]  While the Court did not issue an Opinion to accompany its order denying Defendants' motion to dismiss, the June 11, 2009 Minute Order stated that the motion had been denied "[f]or the reasons stated in open court at the status hearing held on June 11, 2009," and which are reflected in the corresponding Transcript.

most favorable to GYC, and that it resolve all doubts in favor of GYC.  See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2008).

The permissive 12(b)(6) does not apply to the instant motions, and Federal Defendants have now presented evidence which demonstrates conclusively that the Service never abandoned its proposed interim rule.  At this Court's request, the Service lodged its March 2009 Regulatory Agenda, which indicates that the proposed 318 Rule remains "under development" within the meaning of Executive Order No. 12,866 § 4(b).  See July 10, 2009 Minute Order and Dkt. #26. The Service also lodged a Notice of Publication of Federal Register Notice, see Dkt. #29, indicating that the Service had reopened the comment period on the proposed 318 Rule to provide the public with additional opportunity for review and comment.  These documents demonstrate that the Federal Register Notice reflected neither an abandonment of the proposed 318 Rule nor the consummation of the Service's decision-making process with respect to the proposed 318 Rule.[6]  Accordingly, the Federal Register Notice does not constitute a final agency action subject to judicial review.

> **b.    The Service's continued deliberations concerning the proposed interim rule foreclose judicial review of any aspect of that rulemaking process under 5 U.S.C. § 706(2)**

The evidence described above forecloses any determination that the Service "abandoned" its interim rulemaking process.  Thus, at most, GYC might argue that the Federal Register Notice constitutes an interlocutory decision to prolong or delay its decision-making process, and that this decision to delay constitutes reviewable agency action.  This argument, however, would also fail on several grounds.

---

[6]    To the contrary, that rulemaking process is ongoing, and the Service has announced its intent to publish a final rule by November 15, 2009.

As an initial matter, the Federal Register Notice says nothing of the manner in which the Service intends to proceed with the interim rulemaking process.  <u>See</u> 73 Fed. Reg. 74,606 (Dec. 9, 2008).  Accordingly, the Notice itself cannot fairly be characterized as a "decision to delay." Even if it could, however, a decision by the Service concerning how or when to proceed with an ongoing rulemaking action does not meet the test for finality articulated in <u>Bennett v. Spear</u>, 520 U.S. 154 (1997).  The Court in <u>Bennett</u> explained that, in order to be final within the meaning of 5 U.S.C. § 704, a challenged action must "mark the 'consummation' of the agency's decisionmaking process – it must not have been merely tentative or interlocutory in nature." <u>Id.</u> 177-178.  By contrast, a decision to continue deliberations on a proposed rule "does not mark the consummation of an agency decision-making process but instead reflects an interim or interlocutory decision to postpone the decisionmaking process to a more convenient time and to a more comprehensive process." <u>Friends of the Earth v. U.S. Dep't of the Interior</u>, 478 F. Supp.2d 11, 24 (D.D.C. 2007) (quoting <u>Shawnee Trail Conservancy v. Nicholas</u>, 343 F. Supp.2d 687, 701 (S.D. Ill. 2004)).  Accordingly, such interlocutory decisions are not subject to judicial review under Section 706(2).

Finally, any argument that the Service has illegally prolonged or delayed its issuance of the proposed interim rule is not cognizable under 5 U.S.C. § 706(2).  Such "failure to act" claims must instead proceed under Section 706(1) of the APA.  <u>See</u> <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 63 (2004) (describing "failure to act" claims within the scope of 5 U.S.C. § 706(1) as those alleging the "omission of an action without formally rejecting a request – <u>for example, the failure to promulgate a rule or take some decision by a statutory deadline.</u>") (emphasis added).  GYC has not asserted a claim under Section 706(1) and, accordingly, has failed to invoke an applicable right of action.

**B.      Even if GYC Belatedly Attempted to Assert "Failure To Act" Claims, Such Claims Would Fail**

Federal Defendants recognized GYC's pleading errors during the early stages of this litigation, and repeatedly raised them to GYC's attention.  See Dkt. #34 (July 8, 2009 Transcript) at 12-13 (argument of Mr. Montero); see also id. at 5, 19-20, 24.  Defendants explained that, if GYC amended its Complaint to include a "failure to act" claim consistent with its apparent arguments, the Service could then lodge an administrative record demonstrating the futility of GYC's accusations.  GYC, however, declined to amend its Complaint.  Notwithstanding this, GYC continues to criticize the ongoing rulemaking action, presumably because it is not proceeding as quickly as GYC would prefer.  See Dkt. #33 (June 11, 2009 Transcript) at 8:13-14 (Mr. Helle: "[T]here has been no identifiable progress in coming up with a replacement rule . . . ."); Dkt. #34 (July 8, 2009 Transcript) at 17:20-22 (Mr. Helle: "I also believe it's clear that the Park Service has taken no action, to date, to come into compliance . . . .").  GYC also asserts, without any evidentiary basis, that the Service "could have adopted the 318-snowmobile regulation" prior to the start of the 2008-2009 winter season, rather than leaving the Wyoming Court's interim remedy in place.  See Dkt. #32 (GYC Br.) at 12.

GYC cannot have it both ways.  This Court is without an administrative record for the interim rulemaking action because GYC insisted on challenging only the Federal Register Notice.  Having narrowly focused its lawsuit in this manner, GYC cannot now argue that the Service's issuance of a rule to displace the Wyoming Court's interim remedy has been unreasonably delayed.  Notwithstanding this, Defendants present the following arguments to ensure that the Service is not deprived of a fair opportunity to be heard in the event this Court considers GYC's unfounded assertions.  Defendants note, however, that a complete substantive

response concerning the status of proceedings for the proposed 318 Rule cannot be provided at

this time because an administrative record for that process is not before the Court.[7]

### 1.    Standard of Review for "Failure to Act" Claims

"[A] party seeking to challenge an agency's failure to act faces a different burden from

that borne by a challenger of agency action." Nat'l Ass'n of Home Builders v. U.S. Army Corps

of Eng'rs, 417 F.3d 1272, 1280 (D.C. Cir. 2005).  Section 706(1) of the APA, which authorizes

such actions, "carried forward the traditional practice prior to its passage, when judicial review

was achieved through use of the so-called prerogative writs – principally writs of mandamus

under the All Writs Act." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004).  Thus,

any consideration of a claim under Section 706(1) "starts from the premise that issuance of the

writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty

to act." In re Core Communications, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008).

Resolving a claim of unreasonable delay is a "complicated and nuanced" task which

requires consideration of the "particular facts and circumstances" affecting the agency's

decision-making process. Mashpee Wampanoag Tribal Council, Inc., v. Norton, 336 F.3d 1094,

1100.  The D.C. Circuit has articulated four factors to assist in this task:

> To determine whether an agency's delay is unreasonable . . . the court should [1]
> ascertain the length of time that has elapsed since the agency came under a duty

---

[7]    Federal Defendants reserve the right to assert all defenses concerning any 706(1) claim
GYC may belatedly seek to bring, including a defense that neither the Organic Act nor its
implementing regulations impose a non-discretionary duty to promulgate rules designating
routes for snowmobile use.  See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004)
("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to
take a discrete agency action that it is required to take. . . . . The limitation to required agency
action rules out judicial direction of even discrete agency action that is not demanded by law . . .
."); 36 C.F.R. § 2.18(c) ("The use of snowmobiles is prohibited, except on designated routes and
water surfaces that are used by motor vehicles or motorboats during other seasons.  Routes and
water surfaces designated for snowmobile use shall be promulgated as special regulations . . . .").

to act; [2] judge the reasonableness of the delay . . . in the context of the statute which authorizes the agency's action; [3] . . . examine the consequences of the agency's delay; . . . and [4] give due consideration in the balance to any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

Biodiversity Legal Found. v. Norton, 285 F. Supp.2d 1, 12 (D.D.C. 2003) (quoting In re Int'l

Chem. Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992)).[8]

Finally, the APA's requirement that judicial review be based "on the whole record" applies with equal force to claims challenging a failure to act under 5 U.S.C. § 706(1).  See Biodiversity Legal Found. v. Norton, 180 F. Supp.2d 7, 10 (D.D.C. 2001).  This Court has interpreted the "whole record" to include "all documents and materials that the agency 'directly or indirectly considered,' . . . and nothing more nor less."  Pacific Shores Subdivision v. U.S. Army Corps of Eng'rs, 448 F. Supp.2d 1, 4 (D.D.C. 2006).  Unlike the record for challenges to agency action brought under section 706(2) of the APA, however, the administrative record for claims under section 706(1) cannot be limited to those documents or materials that were considered by the decision-maker as of a set point in time because claims under section 706(1) concern actions that an agency has not yet completed.  See Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000) ("When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision. . . . [In failure to act cases, however], review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.")

---

[8]     In Telecommunications Research and Action Ctr. v. F.C.C., 750 F.2d 70 (D.C. 1984) (hereinafter "TRAC"), the D.C. Circuit articulated six factors to assist courts in determining whether an agency's delay merits issuance of a writ of mandamus.  However, the two multi-factor tests are virtually identical.  Accordingly, both are referenced interchangeably in this memorandum.

> **2.      This Court cannot decide a "failure to act" claim under 5 U.S.C. §
> 706(1), even if GYC belatedly raises such a claim, because the
> evidence pertaining to such a claim is not before the Court**

> **a.      The Service's timeliness:**

Assuming GYC alleged a claim under 5 U.S.C. § 706(1), this Court would need to

determine whether the Service's inability to promulgate a new winter-use rule between the date

of this Court's order striking the 540 Rule (September 15, 2008) and the start of the 2008-2009

winter season (December 15, 2008) was so egregious as to merit a court order "interfer[ing] with

the normal progression of agency proceedings . . . ."  In re American Rivers and Idaho Rivers

United, 372 F.3d 413, 418 (D.C. Cir. 2004); see also Cobell v. Norton, 240 F.3d 1081, 1096

(D.C. Cir. 2001) ("An agency's own timetable for performing its duties in the absence of a

statutory deadline is due considerable deference.").  The answer is clearly "no."  GYC could not

credibly argue that the Service has "unreasonably delayed" in issuing a winter-use plan due to

the plethora of logistical and practical difficulties preventing the Service from taking swifter

action.

The Order vacating the 2007 Rule remanded the matter to the Service for further

proceedings and the Service, upon receipt of the Order, immediately set about crafting a new

interim rule.  This Court, however, recognized that the Service would not likely be able to

complete such a rulemaking effort in advance of the 2008-2009 winter season, and the Wyoming

court agreed.  See Greater Yellowstone Coalition v. Kempthorne, 1:07-cv-02111-EGS, Dkt. #76

(Transcript of Proceedings) at 51:20-25 (stating that "the likelihood of [the Service issuing a new

rule consistent with the Court's order] between now and the commencement of the winter season

is remote"); AR Order at 14 ("At this juncture, the Court finds it unlikely that the NPS will have

the ability to promulgate and put into effect a rule for this winter season in a timely manner.").
As it turns out, both were correct.

The Service published a proposed interim rule in the Federal Register on November 5,
2008, and concurrently opened a 15-day comment period – 45 days shorter than what is typically
provided for similar rules.  <u>See</u> 73 Fed. Reg. 65,784, 65,796 (Nov. 5, 2008).  The value of the
already-truncated comment period was compromised, however, by the Wyoming court's
issuance of its interim remedy order, because many of the Service's constituents were left
confused as to whether the remedy order had superseded the rulemaking action.  <u>See</u> Offer of
Proof ¶ 1-2.  Moreover, the large volume of comments received during the comment period (over
27,000) strained the Service's ability to craft an adequate response to those comments in the
short time it had between the close of the comment period on November 20, 2008, and the start
of the winter season on December 15, 2008.  <u>See</u> Offer of Proof ¶ 3; <u>see also</u> <u>Indep. U.S. Tanker
Owners Comm. v. Lewis</u>, 690 F.2d 908, 919 (D.C. Cir. 1982) (holding that the preamble to a
final rule must "respond in a reasoned manner to the comments received, . . . explain how the
agency resolved any significant problems raised by the comments, and . . . show how that
resolution led the agency to the ultimate rule").

Given that this Court's September 15, 2008 Order vacated the 540 Rule only 90 days
prior to the start of the 2008-2009 winter season, <u>see</u> 73 Fed. Reg. at 65,796, and in light of the
circumstances described above, GYC could not credibly assert that the Service's inability to
issue a new rule in advance of the winter season was unreasonable.  <u>See</u> <u>Orion Reserves Ltd.
P'ship v. Kempthorne</u>, 516 F. Supp.2d 8, 13 (D.D.C. 2007) ("The reasonableness of defendants'
delay can only be measured during the periods in which defendants had a duty to act.").
Notwithstanding this, should GYC belatedly attempt to assert "failure to act" claims, Defendants

respectfully submit that the Service would be entitled to lodge the complete administrative

record for those claims, which would include the various public comments expressing confusion

about the status of the interim rulemaking process.

### b.     The Service's competing obligations:

An argument that the Service unreasonably delayed its issuance of the proposed interim

rule would also require that this Court take account of the Service's competing obligations and

limited resources.  See Biodiversity Legal Found., 285 F. Supp.2d at 12 ("The Court should . . .

give due consideration in the balance to any plea of administrative . . . need to prioritize in the

face of limited resources."); TRAC, 750 F.2d at 80 ("[T]he court should consider the effect of

expediting delayed action on agency activities of a higher or competing priority.").

Defendants have not had any reason or opportunity to present evidence reflecting the

Service's competing obligations because a claim under 5 U.S.C. § 706(1) is not before the Court.

Should GYC present such a claim, therefore, Defendants would require an opportunity to submit

such evidence.  See Mashpee Wampanoag Tribal Council, 336 F.3d at 1101-1102 (holding that

district court erred in disregarding the "competing priorities" of the agency, and remanding for a

full evaluation of the agency's delay based on "the complexity of the task at hand, the

significance and permanence of the outcome, and the resources available to the agency.").

### C.     GYC is Not Entitled to the Requested Remedy

GYC requests as a remedy that this Court direct the Park Service to complete "a short-

term, transitional winter use plan responsive to this Court's Orders prior to the opening of the

2009-2010 winter season . . . ."  GYC Br. at 23.  GYC further requests that the Service be

directed to complete a "final" – and presumably long-term – "winter use plan prior to the

opening of the 2010-2011 winter season."  Id.  Even if GYC were to succeed on the merits of its

claims, however, it has not demonstrated that it is entitled to the requested remedy (or, indeed, that such a remedy would serve any purpose).

As an initial matter, GYC is not entitled to an order directing the issuance of a rule by a date certain because no such requirement exists in the legal authorities forming the basis for GYC's claims.  See Hi-Tech Pharm. Co., Inc. v. U.S. F.D.A, 587 F. Supp.2d 1, 9 (D.C. Cir. 2008) (holding that plaintiff was not entitled to an order "compelling the FDA to rule on exclusivity prior to October 28, 2008" because "resolving [plaintiffs'] entitlement to exclusivity is not a discrete agency action that the FDA is required to take, pursuant to statute or regulation, by a time certain.") (emphasis added); Long Term Care Pharmacy Alliance v. Leavitt, 530 F. Supp.2d 173, 187 (D.D.C. 2008) (holding that "a court may not mandate greater timeliness" where Congress itself has declined to establish statutory deadlines); Li v. Chertoff, 482 F. Supp.2d 1172, 1178 (S.D. Cir. 2007) ("[A] court only has jurisdiction to compel an agency to act within a certain time period under the APA when the agency is compelled by law to act within a certain time period.").

Even if the Organic Act or some other statute were somehow found to impose a time line for rulemaking, though, GYC's requested remedy would still be inappropriate for the reasons described in Section IV.B.2, supra.  Simply put, this Court cannot order the Service to complete its ongoing rulemaking effort by a time certain unless it first determines that the Service has unreasonably delayed those proceedings within the meaning of 5 U.S.C. § 706(1).  See Orion Reserves Ltd. P'ship v. Kempthorne, 516 F. Supp.2d 8, 11 (D.D.C. 2007) ("[F]or an unreasonable delay to warrant a court to order agency action with a specific time frame, the unreasonable delay must be egregious.") (internal quotation marks omitted); Cobell v. Norton, 240 F.3d 1081, 1096 (D.C. Cir. 2001) ("For good reason, courts are reluctant to upset existing

agency priorities, unless the delay is egregious."). Defendants have already explained that a finding of unreasonable delay is not merited here. Accordingly, GYC's request for an order directing the Service to issue rules by a date certain must be denied.

Finally, even if this Court had some basis for granting the relief GYC seeks, Defendants submit that GYC's claims merit dismissal on grounds of prudential mootness, because the Service is already doing what GYC requests regardless of the outcome of this case. The doctrine of prudential mootness permits a court, in its discretion, to dismiss a case when "a controversy, [though] not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Chamber of Commerce v. U.S. Dep't of Energy, 627 F.2d 289, 292 (D.C. Cir. 1980). Under this doctrine, "a court may decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies . . . ." Bldg. and Constr. Dep't v. Rockwell Int. Corp., 7 F.3d 1487, 1492 (10th Cir. 1993).

In this case, the Service has already initiated an interim rulemaking process which it intends to complete in advance of the 2009-2010 winter season (the proposed 318 Rule), see 74 Fed. Reg. at 36,640, and GYC concedes that this Rule is "an acceptable transitional measure" pending the Service's preparation of a new permanent rule. See GYC Br. at 10. The Service has also indicated that it will use the time afforded by the interim rule to prepare a new "permanent rule" governing winter use in Yellowstone. Id. Having taken these measures, GYC can provide no basis for its request that the Court issue an order closely managing the scope and pace of the Service's administrative proceedings. See Doraiswamy v. Secretary of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976) ("The administrative function is statutorily committed to the agency, not the

judiciary.  A reviewing court is not to supplant the agency on the administrative aspects of the litigation.").  Accordingly, GYC's request for relief should be denied regardless of whether GYC prevails on the merits of its summary judgment motion.

## V.       CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court deny GYC's motion for summary judgment and that it grant Federal Defendants' cross-motion for summary judgment.

Respectfully submitted this 16th day of September, 2009.

JOHN C. CRUDEN
Acting Assistant Attorney General

/s Guillermo A. Montero
GUILLERMO A. MONTERO
BARRY A. WEINER
LUTHER L. HAJEK
Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C.  20044-0663
Telephone:     202-305-0443
Fax:               202-305-0274
Email:           Guillermo.Montero@usdoj.gov

Of Counsel:
Jason Waanders
Office of the Solicitor
Department of the Interior
1849 C Street, N.W., MS-3230
Washington, D.C.   20240
Tel: (202) 208-7957